**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| NOBELBIZ, INC.<br><br>v.<br><br>GLOBAL CONNECT, L.L.C. | Case No. 6:12-cv-244-MHS (**LEAD**)<br>Case No. 6:13-cv-804-MHS (Member Case) |
| NOBELBIZ, INC.<br><br>v.<br><br>T C N, INC. | Case No. 6:12-cv-247-MHS (**LEAD**)<br><br>Case No. 6:13-cv-805-MHS (Member Case) |

## <u>MEMORANDUM OPINION AND ORDER</u>

This claim construction order construes the disputed claim terms of U.S. Patent No. 8,565,399. For the following reasons, the Court adopts the constructions set forth below. A summary of the final constructions is included with this Order as Attachment A.

# CONTENTS

I.      PROCEDURAL BACKGROUND ..................................................................................3
II.     BACKGROUND ........................................................................................................4
III.    LEGAL PRINCIPLES ...............................................................................................5
IV.     PERSON OF ORDINARY SKILL IN THE ART.................................................................7
V.      CONSTRUCTION OF AGREED TERMS ........................................................................8
VI.     CONSTRUCTION OF DISPUTED TERMS ......................................................................9
        A.      IDS Disclosing Defendants' User's Manuals and Defendants' Invalidity
             Contentions .....................................................................................................9
             1.      The Parties' Positions................................................................................9
             2.      Analysis...................................................................................................11
        B.      "system for handling an outbound call from a call originator to a call
             target" and "computer for handling an outbound call from a call originator
             to a call target" ............................................................................................14
             1.      The Parties' Positions..............................................................................14
             2.      Analysis...................................................................................................16
        C.      "outbound call" and "the call" ......................................................................18
             1.      The Parties' Positions..............................................................................19
             2.      Analysis...................................................................................................20
        D.      "set caller identification data of the outbound call" and "code for setting
             the caller identification data of the outbound call"...............................................21
             1.      The Parties' Positions..............................................................................21
             2.      Analysis...................................................................................................22
        E.      "transmit the caller identification data to the call target in connection with
             the outbound call" and "code for transmitting the caller identification data
             to the call target in connection with the outbound call" ........................................23
             1.      The Parties' Positions..............................................................................24
             2.      Analysis...................................................................................................24
VI.     CONCLUSION.......................................................................................................25

## I.       PROCEDURAL BACKGROUND

In April 2012, Plaintiff filed two separate actions accusing Global Connect, L.L.C. and TCN, Inc. (collectively, Defendants) of infringing U.S. Patent No. 8,135,122 ('122 Patent): *NobelBiz, Inc. v. Global Connect, L.L.C.*, 6:12-cv-244 and *NobelBiz, Inc. v. T C N, Inc.*, 6:12-cv-247 (collectively, the 2012 Cases). On October 9, 2013, the Court held a claim construction hearing to construe the disputed terms of the '122 Patent. The Court entered an order construing the disputed terms of the '122 Patent on December 13, 2013 (Doc. No. 115).[1]

In September 2013, Plaintiff notified the Court that the United States Patent and Trademark Office (USPTO) was preparing to issue what would become U.S. Patent No. 8,565,399 ('399 Patent).[2] The USPTO issued the '399 Patent on October 22, 2013, and Plaintiff filed two new cases accusing Defendants of infringing the '399 Patent: *NobelBiz, Inc. v. Global Connect, L.L.C.*, 6:13-cv-804 and *NobelBiz, Inc. v. T C N, Inc.*, 6:13-cv-805 (collectively, the 2013 Cases). Plaintiff then moved the Court to consolidate the 2012 and 2013 Cases.

On February 27, 2014, the Court granted Plaintiff's motion and consolidated Case No. 6:13-cv-804, *NobelBiz, Inc. v. Global Connect, L.L.C.*, into Case No. 6:12-cv-244 for all pretrial purposes; and consolidated Case No. 6:13-cv-805, *NobelBiz, Inc. v. T C N, Inc.*, into Case No. 6:12-cv-247 for all pretrial purposes (Doc. No. 141). The Court amended the scheduling order to accommodate the consolidation of the 2013 Cases, and the parties briefed the disputed terms for the '399 Patent. Given the Court's familiarity with the technology and contested issues, the Court canceled the scheduled claim construction hearing and considered the issues in the briefs.

---

[1] All citations to documents filed with the Court are to the ECF page number assigned by the Court's filing system in case 6:12-cv-244.

[2] The '399 Patent and the '122 Patent share an identical specification.

## II.    BACKGROUND

The '399 Patent, titled "System and Method for Modifying Communication Information (MCI)," was filed on November 14, 2012, and issued on October 22, 2013.[3] In general, the '399 Patent relates to a system, computer, and computer-implemented method to modify a communication from a call originator, such as a call center, to a call target "to provide a call back number or other contact information to the Target that may be closer to or local to the Target, in order to reduce or eliminate the payment of long distance toll charges in the event the Target dials the callback number." '399 Patent at 1:43–49.

Plaintiff brings suit alleging infringement of claims 1, 2, 4, 6, and 7 of the '399 Patent by Global Connect, and alleging infringement of claims 1, 2, 4, 5, and 6 of the '399 Patent by TCN. Claim 1 of the '399 Patent is representative of the asserted claims and recites the following elements (disputed terms in italics):

> 1. A *system for handling an outbound call from a call originator to a call target*, the system comprising:
> a database storing a plurality of outgoing telephone numbers, each outgoing telephone number having one of two or more area codes; and
> an information processor controlled by the call originator and configured to:
> a) process a trigger comprising at least an area code of a telephone number of the call target;
> b) select from the database a telephone number from the plurality of outgoing telephone numbers where the selected telephone number has at least an area code the same as the area code of the telephone number of the call target;
> c) *set caller identification data of the outbound call to the selected telephone number*; and
> d) *transmit the caller identification data to the call target in connection with the outbound call.*

---

[3] The '399 Patent is a continuation of U.S. Patent Application Serial No. 13/013,233, filed on January 25, 2011, which is a continuation of application No. 11/584,176, filed on October 20, 2006, now U.S. Patent No. 7,899,169 (the Parent Patent), which claims an effective filing date of October 20, 2005, the date of filing of provisional application No. 60/728,717.

## III.   LEGAL PRINCIPLES

Claim construction is a matter of law. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995). The purpose of claim construction is to resolve the meanings and technical scope of claim terms. *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). When the parties dispute the scope of a claim term, "it is the court's duty to resolve it." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008).

The claims of a patent define the scope of the invention. *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002). They provide the "metes and bounds" of the patentee's right to exclude. *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1257 (Fed. Cir. 1989). Accordingly, claim construction begins with and "remain[s] centered on the claim language itself." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004).

Claim terms are normally given their "ordinary and customary meaning." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). Generally, "the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id.* at 1313.

The best guide for defining a disputed term is a patent's intrinsic evidence. *Teleflex*, 299 F.3d at 1325. Intrinsic evidence includes the patent's specification and the prosecution history. *Id.*

The claims are part of the specification. *Markman*, 52 F.3d at 979. The context in which a term is used in the claims instructs the term's construction. *Phillips*, 415 F.3d at 1314; *see also Abtox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1023 (Fed. Cir. 1997) ("[T]he language of the claim frames and ultimately resolves all issues of claim interpretation."). "Differences among claims

can also be a useful guide in understanding the meaning of particular claim terms." *Phillips*, 415 F.3d at 1314.

In addition to the claims, the specification's written description is an important consideration during the claim construction process. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The written description provides further context for claim terms and may reflect a patentee's intent to limit the scope of the claims. *Watts v. XL Sys., Inc.*, 232 F.3d 877, 882 (Fed. Cir. 2000). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Phillips*, 415 F.3d at 1315 (quoting *Vitronics*, 90 F.3d at 1582).

The specification may also resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. For example, "[a] claim interpretation that excludes a preferred embodiment from the scope of the claim 'is rarely, if ever, correct.'" *Globetrotter Software, Inc. v. Elam Computer Grp., Inc.*, 362 F.3d 1367, 1381 (Fed. Cir. 2004) (quoting *Vitronics Corp.*, 90 F.3d at 1583).

But care must be taken to avoid unnecessarily reading limitations from the specification into the claims. *Teleflex*, 299 F.3d at 1326; *see also Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 957 (Fed. Cir. 1983) ("That claims are interpreted in light of the specification does not mean that everything expressed in the specification must be read into all the claims."). "[P]articular embodiments appearing in the written description will not be used to limit claim language that has broader effect." *Innova/Pure Water*, 381 F.3d at 1117; *see also Phillips*, 415 F.3d at 1323 ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments.").

The prosecution history is also part of the intrinsic evidence. *Phillips*, 415 F.3d at 1317. It "consists of the complete record of the proceedings before the PTO and includes the prior art cited during the examination of the patent." *Id.* "As in the case of the specification, a patent applicant may define a term in prosecuting a patent." *Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004). Statements made during the prosecution of the patent may limit the scope of the claims. *Teleflex*, 299 F.3d at 1326; *see Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003) (explaining that the doctrine of prosecution disclaimer "preclud[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution").

Finally, the Court may rely on extrinsic evidence to aid with understanding the meaning of claim terms. *Markman*, 52 F.3d at 981. Extrinsic evidence includes "all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Id.* at 980. Extrinsic evidence is generally less useful or reliable, *Phillips*, 415 F.3d at 1317, and it should not be relied on when it contradicts the intrinsic evidence. *Markman*, 52 F.3d at 981.

## IV.    PERSON OF ORDINARY SKILL IN THE ART

As with the '122 Patent, Plaintiff and Defendants agree that the hypothetical person of ordinary skill in the art would have a bachelor's degree plus two years of experience in the field of telecommunication. Plaintiff adds one more requirement, which is that the person of ordinary skill in the art have familiarity with call center telephone operations. Plaintiff states that "[t]his distinction 'is not dispositive, given the proper application of claim construction canons'" (Doc. No. 178 at 7) (quoting Doc. No. 115 at 6).

This Court adopts the agreed definition.

## V.     CONSTRUCTION OF AGREED TERMS

The parties agreed to the construction of the following term:

| Claim Term/Phrase | Agreed Construction |
|---|---|
| "embedded"<br><br>('399 Patent – claims 2, 4, 14 & 16) | Incorporated within. |

Doc. No. 160 at 1 (Joint Claim Construction and Prehearing Statement). In view of the parties'

agreement on the proper construction of the identified term, the Court hereby **ADOPTS AND**

**APPROVES** the parties' agreed construction.

The Court previously construed the terms "trigger" and "geographic region" as recited in

U.S. Patent No. 8,135,122 ("the '122 Patent") (Doc. No. 115 at 17–21). The parties agreed that

the construction of each of these terms is the same as between the '122 Patent and the '399

Patent and that no further construction by the Court is needed (Doc. No. 160 at 1–2).[4] The parties

also previously disputed whether the term "geographic region" was indefinite. Defendants filed a

Motion for Partial Summary Judgment of Indefiniteness of Claims 6–24 of the '122 Patent (Doc.

No. 90). On December 13, 2013, the Court entered an order denying Defendants' motion (Doc.

No. 114). In the order, the Court stated that one standard for a finding of indefiniteness is

whether the term is "not amenable to construction" or "insolubly ambiguous" (Doc. No. 114 at

10).

On June 2, 2014, the Supreme Court held that the "insolubly ambiguous" and "amenable

to construction" standards fail to satisfy the definiteness requirement of 35 U.S.C. §112, ¶2.

*Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (U.S. 2014). The Supreme Court

---

[4] The parties noted in the briefing that they maintain their prior positions as to the proper
construction of each of these terms, phrases, and clauses as previously set forth to the Court in
the Lead Cases (Doc. No. 160 at 1–2).

further held that "a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Id.* In light of the Supreme Court's holding in *Nautilus*, the Court has reconsidered the undisputed facts and arguments presented by the parties and finds that the intrinsic evidence informs, with reasonable certainty, those skilled in the art about the scope of the term "geographic region." Specifically, a person of ordinary skill in the art would understand the term "geographic region"—in light of the purpose of the invention and the purpose of the limitation—to mean "an area bounded by one or more area codes selected to reduce or eliminate the payment of long distance toll charges in the event the call target dials the callback number." *See, e.g.*, '399 Patent at 1:43–49.

## VI.   CONSTRUCTION OF DISPUTED TERMS

The parties' dispute focuses on the meaning and scope of four groups of terms/phrases in the '399 Patent. The disputed terms/phrase appear in claims 1, 7, and 18 of the '399 Patent.

### A.   IDS Disclosing Defendants' User's Manuals and Defendants' Invalidity Contentions

#### 1.   *The Parties' Positions*

As an initial matter, Defendants spend a significant portion of the briefing discussing the user's manuals and invalidity contentions that were submitted to the USPTO during the prosecution of the '399 Patent. Defendants note that Plaintiff submitted five information disclosure statements (IDS) to the USPTO, two of which are discussed in the briefing (Doc. No. 176 at 10). The first IDS discussed was filed on July 11, 2013, and identified Global Connect's 2004 User's Manual (Doc. No. 165–7) and TCN's 2004 User's Manual (Doc. No. 165–6) (collectively, User's Manuals), for Defendants' 2004 Systems (Doc. No. 176 at 11). According to Defendants, Plaintiff provided full copies of the User's Manuals to the USPTO (Doc. No. 176 at

11). The second IDS discussed was filed on August 14, 2013, and included the docket sheets for the cases presently before the Court, as well as Defendants' Invalidity Contentions (without the detailed claim charts) (Doc. No. 176 at 13). With this background, the Court will now turn to the parties' arguments regarding the User's Manuals and Invalidity Contentions identified in the information disclosure statements submitted by Plaintiff to the USPTO.

Defendants contend that the User's Manuals were published more than a year before the earliest effective filing date of the '399 Patent, and are prior art to the '399 Patent (Doc. No. 176 at 11). Defendants further contend that the User's Manuals disclose a system that meets all of the limitations of Claim 1 of the '399 Patent, except that these systems originate the calls with the local caller ID (Doc. No. 176 at 11–12). Defendants argue that this is different than adjusting the caller ID to a local caller ID after it has been originated and sent (Doc. No. 176 at 11–12). Thus, according to Defendants, the only way to reconcile the '399 Patent claims in view of the User Manuals is to construe the claims so that they require adding the local caller ID after the call is originated and sent (*i.e.*, when it is an outbound call) (Doc. No. 176 at 6). Defendants argue that if the claim is not construed in this manner, then Plaintiff's construction would literally read on the User's Manuals (Doc. No. 176 at 6).

Plaintiff responds that the examiner never cited to, let alone rejected, a single claim of the '399 Patent over the User's Manuals (Doc. No. 178 at 4). Plaintiff further argues that Defendants failed to meet the "clear and unmistakable" burden required for prosecution disclaimer; and that Plaintiff is accusing features developed no earlier than 2007–2009, not in 2004 (Doc. No. 178 at 4). Finally, Plaintiff argues that claim construction is a question of law, and that the Court should not delve into contrived factual disputes concerning non-infringement and invalidity (Doc. No. 178 at 4).

Defendants respond by arguing that Plaintiff concedes that the proper construction of the '399 Patent claims does not encompass Defendants' 2004 Systems (Doc. No. 181 at 2–3). Thus, Defendants contend that the key question is what limitations of independent Claims 1, 7, and 18 are absent from Defendants' 2004 Systems (Doc. No. 181 at 3). Defendants argue that the missing limitation are handling a call after it has been originated and sent (*i.e.*, an "outbound" telephone call) (Doc. No. 181 at 3–4).

Defendants further argue that the extrinsic evidence relied on by Plaintiff confirms, rather than contradicts, the intrinsic evidence (Doc. No. 181 at 4). Defendants also argue that there is no dispute that the examiner considered the various information submitted during the prosecution of the '399 Patent, and that it "seems the ***only*** thing the Examiner knew was lacking from Defendants' 2004 Systems (with respect to the '399 Patent claims) was that these prior art systems originated the calls with the local caller ID" (Doc. No. 181 at 5–6) (emphasis in original). Finally, regarding prosecution disclaimer, Defendants contend that they have met their "clear and unmistakable" burden because Plaintiff "agrees that the '399 Patent claims do not cover Defendants' 2004 Systems" (Doc. No. 181 at 6–7).

2.    *Analysis*

The Court is not persuaded by Defendants' argument. First, Defendants are correct that prior art cited in a patent or cited in the prosecution history of the patent constitutes intrinsic evidence. *Kumar v. Ovonic Battery Co.*, 351 F.3d 1364, 1368 (Fed. Cir. 2003) ("Our cases also establish that prior art cited in a patent or cited in the prosecution history of the patent constitutes intrinsic evidence."). However, for prosecution disclaimer to arise, "the alleged disavowing actions or statements made during prosecution [must] be both clear and unmistakable." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1326 (Fed. Cir. 2003). Here, Defendants' do not

contend that either the patentee or the examiner provided any comments or statements regarding the User's Manuals or the Invalidity Contentions. Indeed, Defendants do not point to any instance where the patentee attempted to distinguish the claims from the User's Manuals or the Invalidity Contentions. *See, e.g., Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1375 (Fed. Cir. 2008) ("Prosecution disclaimer does not apply, for example, if the applicant simply describes features of the prior art and does not distinguish the claimed invention based on those features.").

Likewise, Defendants do not point to any instance where the examiner rejected the claims in view of the User's Manuals or the Invalidity Contentions. Instead, Defendants only argument is that "it seems" that the only thing the examiner knew was lacking from Defendant's 2004 System was the limitation Defendants now propose (Doc. No. 181 at 6). Defendants' characterization of what the examiner seemed to know is not a statement, much less a "clear and unmistakable" statement. Moreover, it is not in the intrinsic record and is not something that the public could rely on. *Spectrum Int'l v. Sterilite Corp.*, 164 F.3d 1372, 1378 (Fed. Cir. 1998) ("That explicit arguments made during prosecution to overcome prior art can lead to narrow claim interpretations makes sense, because 'the public has a right to rely on such definitive statements made during prosecution.'") (quoting *Digital Biometrics v. Identix, Inc.*, 149 F.3d 1335, 1347 (Fed. Cir. 1998)). Simply stated, it is *post hoc* attorney argument.

Indeed, Defendants take the untenable position that their construction is supported simply because the examiner *failed* to reject the claim (Doc. No. 181 at 5). The examiner's silence or "failure" to reject a claim does not rise to a clear and unmistakable disclaimer. Accordingly, the Court finds that Defendants have failed to show that the patentee made a clear and unambiguous disavowal of claim scope as required to depart from the meaning of the term provided by the

written description. *See, e.g.*, *Schwing GmbH v. Putzmeister Aktiengesellschaft*, 305 F.3d 1318, 1324–25 (Fed. Cir. 2002) ("Prosecution history . . . cannot be used to limit the scope of a claim unless the applicant took a position before the PTO that would lead a competitor to believe that the applicant had disavowed coverage of the relevant subject matter.").

Defendants also argue that if the Court does not adopt their construction, then the claims will read on Defendants' 2004 Systems (Doc. No. 165 at 6). This statement is based on Defendants' assertion that their Invalidity Contentions show that their 2004 System invalidates the claims. First, the examiner did not indicate whether he agreed or disagreed with Defendants' Invalidity Contentions. The only thing the examiner indicated was that he considered Defendants' Invalidity Contentions, and without more, allowed the claims.

Second, the task before the Court is to determine the proper construction of the claim terms in light of all of the intrinsic evidence, not just the evidence Defendants contend invalidates the claims. Accordingly, the Court will weigh all of the intrinsic evidence and not focus solely on the User's Manuals and the Invalidity Contentions. In the end, "if the only claim construction that is consistent with the claim's language and the written description renders the claim invalid, then … the claim is simply invalid." *Rhine v. Casio, Inc.*, 183 F.3d 1342, 1345 (Fed. Cir. 1999). But at this stage in the proceedings, Defendants' alleged factual findings are unsupported and are premature.[5] *Id.* at 1346 ("[Defendants] cannot avoid a full-blown validity analysis by raising the specter of invalidity during the claim construction phase."). With this understanding, the Court turns to the disputed terms.

---

[5] In its reply, Plaintiff argues that the functionality of Defendants' 2004 system is disputed (Doc. No. 178 at 9).

**B.**     **"system for handling an outbound call from a call originator to a call target"
and "computer for handling an outbound call from a call originator to a call
target"**

| Claim Term, Phrase or Clause | Claim | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|---|
| "system for handling an outbound call from a call originator to a call target" | 1 | No construction needed because the preamble is not limiting. | Performing one or more steps on a telephone call after the telephone call has been originated and sent to the call recipient. |
| "computer for handling an outbound call from a call originator to a call target" | 7 | No construction needed because the preamble is not limiting. | Computer that acts on or manages a telephone call after the telephone call has been originated and sent from the call originator to the call recipient. |

*1.     The Parties' Positions*

The disputed phrases appear in the preambles of claims 1 and 7.[6] Plaintiff contends that

the preambles in the '399 Patent do not need to be construed because the preambles are not

limiting and the ordinary meaning of the phrases is plain (Doc. No. 172 at 10). Plaintiff further

argues that Defendants' construction is incorrect because it adds temporal limitations by

requiring the steps to occur "after the telephone call has been originated and sent" (Doc. No. 172

at 10).

Defendants respond that the preamble are limitations because they provide antecedent

basis for "the outbound call" in the body of the claim (Doc. No. 176 at 17–18). Defendants also

argue that the preambles are limitations because they give life, meaning, and vitality to the claim

(Doc. No. 176 at 18). Defendants further argue that the preambles are essential and are

underscored as important throughout the specification (Doc. No. 176 at 18). Finally, Defendants

argue that their proposed temporal limitation is required because the preamble of Claim 1 recites

---

[6] The similar phrase "computer implemented method for handling an outbound call from a call
originator to a call target" appears in the preamble of independent claim 18.

that the "outbound call" is "from a call originator to a call target" (Doc. No. 176 at 19). Thus, according to Defendants, one skilled in the art would understand that the calls are being processed "after the telephone call has been originated and sent to the call recipient" (Doc. No. 176 at 19).

Plaintiff replies that Defendants' construction is their non-infringement and invalidity arguments in disguise and should be rejected (Doc. No. 178 at 8). Plaintiff argues that the preambles describes a purpose for the claim and do not add anything to the claim bodies (Doc. No. 178 at 8). Plaintiff also contends that the ordinary meaning of the preamble is readily understood by a person of ordinary skill in the art, and that Defendants' construction violates the doctrines of preferred embodiments and claim differentiation (Doc. No. 178 at 9–10). Plaintiff further argues that Defendants failed to meet their "clear and unmistakable" burden of proving prosecution disclaimer (Doc. No. 178 at 10–11). Finally, Plaintiff argues that there is no description in the preamble of an already originated call as Defendants contend, and that Defendants rewrite of the claim cannot be right (Doc. No. 178 at 11).

Defendants reply that none of the embodiments taught and disclosed in the '399 Patent originate telephone calls having a local caller ID customized at the time of origination (Doc. No. 181 at 9). Defendants further contend that they are not advocating a limitation as to "where" the method takes place; rather their construction reflects the "when" or "at what point" (*i.e.*, after the call is originated and sent) (Doc. No. 181 at 9). Defendants further argue that the express goal of the '399 Patent was to "implement a system to modify a communication from an Originator to provide a callback number or other contact information to the Target that may be closer or local to the Target" when a non-local caller ID was inserted at the time of origination (Doc. No. 181 at 10).

        *2.        Analysis*

Whether to treat a preamble term as a claim limitation is "determined on the facts of each case in light of the claim as a whole and the invention described in the patent." *Storage Tech. Corp. v. Cisco Sys., Inc.,* 329 F.3d 823, 831 (Fed. Cir. 2003). Generally, "the preamble does not limit the claims." *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1346 (Fed. Cir. 2002). Nonetheless, the preamble may be construed as limiting if it provides antecedent basis for later claim elements. *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1367–77 (Fed. Cir. 2005). Here, the Court agrees with Defendants that the preamble provides antecedent basis for the term "outbound call." However, the Court does not adopt Defendants' construction and finds that the preambles are unambiguous, are easily understandable by a jury, and no construction is needed.

Defendants ask the Court to redraft the preamble of the claims to add a temporal limitation. Neither the preamble nor the body of the claims require this temporal limitation. The preamble of Claim 1 recites "[a] system for handling an outbound call from a call originator to a call target, the system comprising:" '399 Patent at 5:5–6. Similarly, the preamble of Claim 7 recites "[a] computer for handling an outbound call from a call originator to a call target, the computer comprising:" '399 Patent at 5:40–41. Both preambles recite what the system or computer is intended to do (*i.e.*, handles calls from one party to another party) without further specifying how it does it or an order in which it must be done.

To be sure, the body of the claims do not recite or require performing the steps only after the telephone call has been originated and sent to the call recipient. Instead, Claim 1 recites that an information processor is controlled by the call originator and is configured to "set caller identification data of the outbound call to the selected telephone number." Whether the "outbound call" has been sent before the caller identification is set is not specified in the claims

and there is no requirement that the steps be performed only after the telephone call has been originated and sent. Accordingly, the recitation of "outbound call" in the preamble does not support redrafting the claims to add a temporal limitation.

Similarly, the specification states that in one embodiment "the system and method may operate in Originator's 100 PBX (e.g. corporate phone system, predictive dialer, call distribution system) or may be attached to or embedded within Originator's 100 communication device (e.g. telephone, VoIP phone, VoIP soft phone)." '399 Patent at 2:58–62. Thus, the specification discloses an embodiment different from the one illustrated in Figure 1, which Defendants contend illustrates that "an outbound telephone call is intercepted after origination and the original caller ID telephone number is modified with one that is more local to the called party." (Doc. No. 176 at 8). Defendants acknowledge that this embodiment is not illustrated, but contend that even in this alternate embodiment, the communication device must still originate and send the call before the outbound call is then captured, modified, and released with the local caller ID (Doc. No. 176 at 22).

The Court disagrees. Neither the claims nor the specification limit the communication device in the alternate embodiment to originating and sending the call before the call is captured. The Court appreciates that the figures illustrate embodiments that handle the outbound calls after they have been originated. But the claims are not limited to only the illustrated embodiments. *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 632 F.3d 1246, 1254 (Fed. Cir. 2011) ("[E]ven where a patent describes only a single embodiment, claims will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words of expressions of manifest exclusion or restriction.") (quoting *Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1381 (Fed. Cir. 2009). Indeed, dependent claims 2, 14, and 24

explicitly claim the alternate PBX-embodiment, which is not illustrated in the figures. Given these claims depend from the asserted independent claims, Defendants' construction could violate the doctrine of claim differentiation by reading out embodiments of the dependent claim from the scope of the independent claims. Accordingly, the Court is not persuaded that it should limit the independent claims to Defendants' "catch-and-release" construction given the intrinsic evidence.

Finally, for the reasons stated above, the Court finds that the User's Manuals and Invalidity Contentions disclosed to the USPTO do not support redrafting the preambles as Defendants propose. Defendants do not point to any instance where the patentee attempted to distinguish the claims from the User's Manuals or the Invalidity Contentions. Likewise, Defendants do not point to any instance where the examiner rejected the claims in view of the User's Manuals or the Invalidity Contentions. Accordingly, the Court finds that Defendants have failed to show that the patentee made a clear and unambiguous disavowal of claim scope as required to depart from the meaning of the preambles provided by the written description.

In light of the intrinsic evidence, the Court finds that the preambles of claim 1 and claim 7 are unambiguous, are easily understandable by a jury, and require no construction. Therefore, the preambles will be given their **plain and ordinary meaning**.

### C.    "outbound call" and "the call"

| Claim Term, Phrase or Clause | Claim | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|---|
| "outbound call" | 1, 7 | No construction needed. | A call after it has been originated and sent. |
| "the call" | 7 | No construction needed. | The outbound call (as defined above). |

*1.      The Parties' Positions*

Plaintiff contends that "outbound call" and "the call" are easily understood terms that do not require construction (Doc. No. 172 at 11). As with the preamble phrases, Plaintiff contends that Defendants' constructions improperly add temporal limitations where none exist (Doc. No. 172 at 11). Plaintiff argues that neither the intrinsic nor the extrinsic evidence suggest a time restriction (Doc. No. 172 at 11). Finally, Plaintiff contends that Defendants' proposed constructions read out embodiments of the asserted claims (Doc. No. 172 at 11).

Defendants respond that the issue again boils down to the proper construction of the phrase "outbound call from a call originator to a call target," which they contend is a call after it has been originated and sent (Doc. No. 176 at 21). Defendants argue that the terms "the outbound call" and "the call" rely on the preambles of the claims for antecedent basis (Doc. No. 176 at 20–21). Accordingly, Defendants restate the argument that their constructions make clear the distinction between the claims and the User's Manuals in the prosecution history (Doc. No. 176 at 21). Defendants also argue that their constructions do not read out of the claims any of the disclosed embodiments (Doc. No. 176 at 22–23). Finally, Defendants contend that whether the "outbound call" term excludes one of several embodiments taught and disclosed in the '399 Patent does not mean the Court should ignore the term (Doc. No. 176 at 23). Defendants also cite to extrinsic evidence that defines "outbound" as "outward bound: headed away" (Doc. No. 176 at 20 n.7).

Plaintiff replies that Defendants construction negates the ordinary meaning of the term "outbound call" and violates several canons of claim construction (Doc. No. 178 at 11–12). Plaintiff further argues that the plain and ordinary meaning should control (Doc. No. 178 at 12).

Finally, Plaintiff does agree with Defendants that "the call" in claim 7 should be given the same meaning as "the outbound call" (Doc. No. 178 at 12).

>   2.   *Analysis*

The Court agrees with the parties that "the call" and "the outbound call" recited in claim 7 should be given the same meaning. And, as discussed above, the Court finds that these terms rely on the preamble for antecedent basis. However, as with the Court's construction for the preambles of Claim 1 and Claim 7, the Court disagrees that the term "outbound call" requires redrafting the claims to add a temporal limitation. The Court's reasoning for this is discussed above and the parties agree that the same analysis applies here (Doc. No. 176 at 21).

The only additional evidence cited by the parties was a footnote reference to a dictionary definition (Doc. No. 176 at 20 n.7). The Court has reviewed the definition for "outbound" and finds that it does not change the Court's conclusion. The dispute is not whether an "outbound call" is "outward bound," as defined in the extrinsic evidence. Instead, the dispute is when must the "outbound call" be "outward bound." Indeed, Defendants state that they are not advocating a limitation as to "where" the capture-modify-release method takes place, but rather their construction reflects the "when" or "at what point" (Doc. No. 176 at 22). However, for the reasons stated above, the Court is not persuaded that it should limit the independent claims to Defendants' "catch-and-release" construction given the intrinsic evidence.

Accordingly, in light of the intrinsic and extrinsic evidence, the Court finds that the terms **"outbound call"** and **"call"** are unambiguous, are easily understandable by a jury, and require no construction. Therefore, the terms "outbound call" and "call" will be given their **plain and ordinary meaning**.

**D.** **"set caller identification data of the outbound call" and "code for setting the caller identification data of the outbound call"**

| Claim Term, Phrase or Clause | Claim | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|---|
| "set caller identification data of the outbound call to the selected telephone number" | 1 | No construction needed. | Adjust the caller ID data of the outbound call to the selected telephone number. |
| "code for setting the caller identification data of the outbound call to the selected telephone number" | 7 | No construction needed. | Code for adjusting the caller ID data of the outbound call to the selected telephone number. |

Both terms include the common phrase: "set[ing] caller identification data of the outbound call." The Court finds that this is the term that should be construed because the additional term in the first clause—"to the selected telephone number"—needs no further construction.

### 1.    *The Parties' Positions*

Plaintiff argues that Defendants ignore the ordinary meaning, and improperly try to insert their own verb "adjust" in favor of the patentee's chosen verb "set" (Doc. No. 172 at 12). Plaintiff further argues that Defendants improperly rely on random on-line dictionary definitions, and that their citations to the intrinsic record do not support their construction (Doc. No. 172 at 12).

Defendants respond that the entire support for the terms "set" and "setting" is based upon the teaching and disclosure of modifying the caller ID data of an already originated telephone call (Doc. No. 176 at 25). Defendants contend that the term "setting" is not in the original '399 Patent application (Doc. No. 176 at 25). Defendants further contend that "the outbound call" necessarily already has caller ID data, and thus "setting" means modifying or adjusting the caller

ID (Doc. No. 176 at 25). Defendants also argue that the problem with not defining the term "set" is that there is a laundry list of meanings that can be ascribed to this term (Doc. No. 176 at 25–26). Finally, Defendants contend that their construction preserves the validity of the claims in view of the intrinsic evidence (Doc. No. 176 at 26–27).

Plaintiff replies that Defendants' construction is an attempt to insert their non-infringement argument of replacing an existing caller ID (Doc. No. 178 at 12). Plaintiff argues that the Court already has considered and rejected this argument in construing the "modifying" claim element as its plain and ordinary meaning (Doc. No. 178 at 12). Plaintiff further argues that Defendants' construction is premised on their faulty construction for "outbound call." (Doc. No. 178 at 12–13).

Defendants reply that Plaintiff ignores the intrinsic evidence that shows that the setting of the caller ID of the outbound call means adjusting the caller ID of the outbound call (Doc. No. 181 at 10–11). Defendants further argue that the support for the "set[ting]" limitation in the '399 Patent is based upon the teachings regarding modifying (*i.e.*, adjusting) the caller ID of the outbound call (Doc. No. 181 at 11). Defendants contend that their construction is correct because the term "setting" was not used in the original application and has many definitions of varying scope (Doc. No. 181 at 11).

> 2.   *Analysis*

Defendants are correct that the term "set" only appears in the claims and in the Abstract of the '399 Patent. The Court further finds that the specification states that the system may modify the outbound caller ID. '399 Patent at 4:20–23 ("[T]he system may modify the communication to send an outbound Caller ID to Target 140 having the contents of entry 3 in column C). However, the specification does not use the word "adjust," as Defendants propose.

Moreover, as discussed above, the intrinsic evidence does not require performing the steps after the telephone call has been originated and sent to the call recipient. Thus, the Court is not persuaded that it should redraft the claim to change "set" to "adjust."

Moreover, the Court has reviewed the definitions provided by Defendants and is not convinced that "adjust" provides further clarity. Indeed, "set" or "setting" are not confusing terms, and the Court is not persuaded that the intrinsic evidence fails to inform, with reasonable certainty, those skilled in the art about the scope of the terms. Granted, in order to set something, something must be present to set, but the intrinsic evidence does not require that this something be the caller ID data of a telephone call only *after* the telephone call has been originated and sent to the call recipient.

Accordingly, in light of the intrinsic and extrinsic evidence, the Court finds that the phrases "set caller identification data of the outbound call" and "code for setting the caller identification data of the outbound call" are unambiguous, are easily understandable by a jury, and require no construction. Therefore, the terms will be given their **plain and ordinary meaning**. And, as noted above, the additional limitation "to the selected telephone number" needs no further construction.

> **E.** **"transmit the caller identification data to the call target in connection with the outbound call" and "code for transmitting the caller identification data to the call target in connection with the outbound call"**

| Claim Term, Phrase or Clause | Claim | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|---|
| "transmit the caller identification data to the call target in connection with the outbound call" | 1 | No construction needed. | Transmit the set caller ID data to the call target in connection with the outbound call. |
| "code for transmitting the caller identification data to the call target in | 7 | No construction needed. | Code for transmitting the set caller ID data to the call target in connection with the |

| connection with the outbound call" | | | outbound call. |
|---|---|---|---|

### 1. The Parties' Positions

Plaintiff contends that the phrases are readily understandable and do not require inserting the word "set" into what otherwise are unambiguous words (Doc. No. 172 at 13). Defendants contend that their construction makes clear that it is the set caller ID data that must be transmitted with the outbound call, and not some other caller identification data (Doc. No. 176 at 27–28). Plaintiff replies that the claim term is readily understandable by a person of ordinary skill without Defendants' unfounded insertion or importation (Doc. No. 178 at 13.) Defendants reply that their construction is not importing a limitation into the claims, but instead reflects what caller identification data is being transmitted in the transmit[ting] limitation, namely the set caller identification data from the set[ting] limitation (Doc. No. 181 at 10).

### 2. Analysis

Turing to the claim language, step (c) of Claim 1 requires the information processor to be configured to "set caller identification data of the outbound call to the selected telephone number." Step (d) of Claim 1 further requires the information processor to be configured to "transmit the caller identification data to the call target in connection with the outbound call." Thus, the Court agrees with Defendants that the use of the article "the" in step (d) (*i.e.*, "the caller identification data") indicates an antecedent basis to the caller identification data set in step (c). However, the Court finds that a person of ordinary skill in the art would understand this from reading the claims and is not persuaded to redraft this unambiguous phrase. Moreover, the Court is concerned that Defendants' construction could be argued to mean that only the "set" caller identification data is transmitted and nothing else. Thus, to the extent that Plaintiff argues that the set caller identification in step (c) does not need be transmitted in step (d), the Court rejects such

an argument. Likewise, to the extent that Defendants argue that only the set caller identification can be transmitted in step (d) and nothing else, the Court rejects such an argument.

Accordingly, in light of the intrinsic and extrinsic evidence,[7] the Court finds that the phrases "transmit the caller identification data to the call target in connection with the outbound call" and "code for transmitting the caller identification data to the call target in connection with the outbound call" are unambiguous, are easily understandable by a jury, and require no construction. Therefore, the terms will be given their **plain and ordinary meaning**.

## VI.     CONCLUSION

For the reasons stated, the Court adopts the constructions set forth above and summarized in Attachment A.

**It is SO ORDERED.**

**SIGNED this 15th day of September, 2014.**

_Michael Schneider_
MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE

---

[7] Only July 17, 2014, Defendants filed a Joint Objection to Plaintiff's Extrinsic Evidence and Joint Motion to Strike Such Extrinsic Evidence and to Strike Portions of Plaintiff's Claim Construction Reply in Reliance Thereof (Doc. No. 183). As indicated in this order, the Court found it unnecessary to refer to evidence cited in Plaintiff's Claim Construction Reply Brief (Doc. Nos. 178 at 2, 178-1, 179 and its exhibits). Accordingly, Defendants' Joint Motion to Strike is **DENIED AS MOOT**.

## ATTACHMENT A

| Claim Term/Phrase | Location | Court's Final Construction |
|---|---|---|
| "system for handling an outbound call from a call originator to a call target" | 1 | plain and ordinary meaning |
| "computer for handling an outbound call from a call originator to a call target" | 7 | plain and ordinary meaning |
| "outbound call" | 1 & 7 | plain and ordinary meaning |
| "the call" | 7 | plain and ordinary meaning |
| "set caller identification data of the outbound call to the selected telephone number" | 1 | plain and ordinary meaning |
| "code for setting the caller identification data of the outbound call to the selected telephone number" | 7 | plain and ordinary meaning |
| "transmit the caller identification data to the call target in connection with the outbound call" | 1 | plain and ordinary meaning |
| "code for transmitting the caller identification data to the call target in connection with the outbound call" | 7 | plain and ordinary meaning |